May it please the Court, my name is Angela Hanson and I represent the appellant Arthur Lee Anderson. This is a sentencing appeal. Mr. Anderson appeals from the District Court sentence of 210 months because it is his position that the District Court erred when it applied a two-level adjustment under Guideline 3B1.4. That Guideline enhances a sentence where a defendant used or attempted to use a minor, and the Commission specifically defined what that means. Before I address why the District Court erred, I'd like to discuss with the Court an important procedural point which will explain to the Court what facts are relevant and before the Court. In the Court below, Mr. Anderson submitted declarations and statements. He also had a plea agreement with the government. And the trial court, the District Court, relied exclusively on Mr. Anderson's admissions in his plea agreement to apply the adjustment. Mr. Anderson submitted declarations that were consistent with the plea agreement, but those declarations provided further context to the two transactions, to the two drug transactions. Now, the declarations we submitted caused factual disputes to develop between the government's version and Mr. Anderson's version, but the District Court did not resolve those factual disputes. At the government's suggestion and urging, the District Court did not have an evidentiary hearing. And the government, the party with the burden here, submitted to the District Court that it could assume everything that Mr. Anderson's declarations said were true, but that the government would still win based on the admissions in Mr. Anderson's plea agreement. It's the equivalent of a summary judgment motion in the civil context. Now, the District Court took up the government's offer and did not consider any facts beyond Mr. Anderson's plea agreement and took as true Mr. Anderson's declarations. However, as I'll discuss later, the District Court disregarded those declarations, and we believe that decision was an error as well. The reason this is important is because in the government's papers, Your Honors, the government cites two facts that are disputed, that were not adjudicated in the court below. A classic example is the reference to Ms. Appleberry, the 17-year-old in this case, using the reference, Uncle Art, to refer to my client. We disputed that fact. Another example, the government cites in its brief – excuse me – in its brief that Mr. Anderson negotiated the second transaction. Isn't the critical point in this sentencing appeal what the informant said? I believe what the informant said was critical, because the informant was – Didn't the informant say the kid wasn't used or influenced by Anderson? Yes, he did, Your Honor. He was a precipient witness to what Ms. Appleberry, the 17-year-old, was doing. He was the only – he's the one who – Precipient witness means directly involved in the deal. He was that, for sure. Yes. And he initiated Ms. Appleberry's involvement. And then Ms. Appleberry, in turn, then contacted Mr. Anderson to supply the drugs. So Ms. Appleberry affirmatively involved Mr. Anderson in the offense. Do you agree that that's the tipping point, what the informant said? I believe what the informant said and what Ms. Appleberry said, her statements as well, both, prove that Mr. Anderson did not affirmatively involve her to commit the offense. He did not train her. He did not counsel her. He did not direct her. They were working together as partners. I understand we have to take our case, the Affirmative Act, and take a look at that. But the wording is rather all-encompassing – directing, commanding, encouraging, intimidating, training, procuring, recruiting, soliciting. If he did any of those things, then the enhancement occurs. So this is my question. And I haven't made up my mind on this. I've got a big question mark in my mind. So have in mind that I want to – after the first drug deal, the second one, the girl says that she may come back for more. He says to her, let me know. And, Your Honor, that's a perfect example of – You haven't heard my question. Sure. My question is, isn't he at that time encouraging her to let him know to get involved in the drug deal? That fact, Your Honor, is not from Mr. Anderson's plea agreement. The government is citing to Ms. Appleberry's post-arrest statement, which is disputed in this case. Ms. Appleberry explained the context in which that statement was made. And in Ms. Larson's declaration, we explained that Ms. Appleberry's post-arrest statement should not be taken as true. And so that fact that the government submits to this Court was not adjudicated in the court below. But setting that aside, assuming it is true, at most it's an indication that he was interested or willing to continue as her supplier. And I think we'd be hard-pressed to say that he encouraged her when she is the one who initiated the offense in the first place. It only means that he was willing to go along with her. He's encouraging her to get to him if it's called. But I'm – I'm a little concerned about your argument that these very important facts, to the extent that the district judge may be correct, are factors which were not litigated, and you asked for an evidentiary hearing, and it was not given. And the reason it was not given, did the district judge make – respond as to why an evidentiary hearing is unnecessary? It did. And, Your Honor, just for the record, I did not ask directly during the sentencing hearing for a hearing, because what had happened was one was no longer necessary when the government told the court that it could assume the truth of everything that we had submitted. So a hearing was no longer necessary. There was no request for an evidentiary hearing? There was a request in our sentencing memorandum. We had submitted declarations, and then we had proffered to the court our evidence. And in a footnote to our sentencing memorandum, we told the court which witnesses we would call, as we're required to do under the local rules. At the hearing, what had happened was the court limited its factual findings to what Mr. Anderson admitted to in his plea agreement, and assumed the truth of everything Mr. Anderson submitted, his declarations from the informant and from Ms. Larson, who detailed Ms. Appleberry's statements and her involvement. By assuming the truth of all of those statements, there was no need for a hearing. The court found those statements irrelevant and disregarded them because it believed that Ms. Appleberry's subjective intent was not necessary. To your sentencing memorandum, you asked for an evidentiary hearing. When you got to the actual sentencing, the district judge says, we don't need it because I'm only going to look to what he's already admitted to in pleading guilty. That is ultimately what the court did. The court suggested we have a hearing,  And the government counsel — What's wrong with him looking to the — to that, to what the defendant admitted in pleading guilty? There's nothing wrong with that, is there? There is nothing wrong with that. But what you're saying is that there's nothing in there that shows any of these many indications here, is that right? Exactly. Exactly. And I gather you're also saying that to the extent that we're called upon to rely on the Appleby statement, that's beyond the scope of what was considered at the sentencing hearing. It would be improper to look at that statement because it wasn't part of the stipulation, if you will, of the basis for the enhancement. That's right. And when I say the Appleby statement, I hope the Court is referring to her post-arrest — Yes. Yes. We understand that. Yes. Yes, exactly. And where is that statement that he agreed to in pleading guilty? That's at pages 8 to 11, the factual basis for his plea. Is the government's excerpt of the record? I'm sorry. I'm referring to the defense excerpt of the record. The plea agreement is the first document. And Mr. Anderson's admissions begin on page 8. And that's in what document? Mr. Anderson's, the appellant's excerpts of record. Page 8. Yes, Your Honor. And, Your Honors, I would like to reserve time for rebuttal. Yes. We've got a little over a minute. We'll hear from the government at this time. Good morning, Your Honor. Deborah Douglas. I'm representing the United States. Your Honor, there were factual inaccuracies in what was just represented to the Court, and I'll get to that in a minute. But let me just get to the heart of this. The issue in this case is whether the facts are sufficient as a matter of law to satisfy the legal definition of use or attempted use of a minor for the purpose of a two-level enhancement under 3B1.4. The definition of use or attempted to use includes directing, commanding, encouraging, soliciting, and other things. Defendant took affirmative steps and used the minor in a manner that furthered or was intended to further the commission of the offenses. For example, defendant rewarded the juvenile by agreeing to give her part of the drug proceeds for each drug transaction. Defendant was in charge. Defendant said he just wanted to be fair about the situation. Defendant decided what the juvenile's share would be. For example, for the first transaction, defendant gave the juvenile $500 of the $2,000 in drug proceeds. The juvenile said the defendant only gave her $300. For the second transaction ---- Alito, is this on the record? Yes, Your Honor, it is. Now, where? Yes. With respect to the ---- my brief cites to the appellant's record, page 10, and to page 43, so it looks like the pertinent cites are from page ---- I see where you are. Thank you. And GER 40, that's when the juvenile stated that Anderson only gave her $300 for that deal. Can we clear up one thing here? Counsel for Anderson says that the government, prior to consideration of sentencing, agreed that the district court could take as true the entire content of the declaration submitted on behalf of Anderson. Is that correct? Your Honor, the ---- if you look at page 86 of the record ---- Can you start with a yes or a no? Oh, yes, Your Honor. The government ---- That is correct. You did say that. I did say that, because they ---- May I go from that? You agree you did say that? I did, Your Honor. Okay. And committed the government to that? Yes, Your Honor. At any point, did you tell the district court, of course, we want you to consider things in the entire record of this proceeding that may contradict what is said in those declarations? Your Honor, what the government said was, if the court were to consider all of the evidence in the record, which includes all of the evidence that the defendant submitted, not only the district court did not limit its determination to the plea agreement, she considered all of the defendants' declarations, including declarations submitted about 10 minutes before the case was called at sentencing, and that's a declaration from Frank Tamparello. You ---- did you ---- did you try the case? Your Honor? Were you present at sentencing? Yes, Your Honor. Okay. You were the representative of the United States at sentencing. I was. Did you understand that when you told the district court they could take the ---- it, she, Judge Armstrong, could take that, the content of the declarations is true, that there were things in those declarations that were contradicted by other places in the record? Your Honor, the government pointed out to the judge that not everything in the declarations were accurate, but even if the court were to assume that the declarations were accurate, the two-level enhancement still applied based upon all of the facts in the record. The plea agreement ----  I guess, Your Honor. My brief cites to the appellant's record, pages 86 to 88. Now, we all understand the difference in a proceeding in any trial court where one side says, there's no need to call these witnesses. I assume that if they were called and sworn that what's contained in the declarations is what they would say under oath in front of Your Honor. Your Honor ---- As opposed to saying, Your Honor may assume that what's in these declarations is true and correct. Do you understand there's a difference between the two? Yes, Your Honor. The government was not saying that what was in the declarations was true and correct. The ---- I think the heart of this, Your Honor, is the ---- if the court were to look at page 86 of the appellant's record, the judge said, let's set a hearing. That is completely unequivocal. The government made a position. The judge said, let's set a hearing. And then on page 93, you have a waiver from the defendant. And the waiver from the defendant, the defendant waived the hearing, and this is unequivocal. The defendant says ---- I think she said as much. I don't ---- it doesn't sound to me like there's any dispute about that. I mean, she's saying there was a reason they agreed not to have a hearing or not to demand a hearing. But I think she agrees with what you've just said, that the defense said we don't need a hearing. Because the defense made a tactical decision, and now they seek to rewrite the record. They were not denied an evidentiary hearing. The court would have given them an evidentiary. I didn't hear her say that. I didn't hear her argue that. Did you argue that? Okay. Assume she agrees. Right. Go ahead. So the hearing was waived, and based upon the records ---- What she's saying is the reason they didn't want a hearing is that you, on behalf of the government, conceded the truth and accuracy of what was contained in the declarations. And I take it your position is you did nothing of the kind. What the government said, Your Honor, was that we disputed the accuracy of the declarations. But even if the judge were to assume that they were correct, taking all of that, taking the entire record as a whole, it's very clear, Your Honor, that two-level enhancement applies. There is a ---- if I can continue with respect to defendants' use of the minor in this particular case. Well, all right. Let's get back to where you started, then. But I mean, basically, although you keep kind of trying to cross your fingers, we're at the four corners of the declarations and the plea agreement, the documents before the Court. You keep wanting to say we disputed, but in fact, you asked the district court to go forward on the basis of the undisputed facts in the record. And you said that's enough. And that's what you're really arguing today, isn't it? And the court could have rejected that. The court offered a hearing, and defense counsel didn't want it. Yes. That wasn't my question. So let's go back to where you started. Okay. You said that it showed that the defendant controlled the transaction because the juvenile $500 in the first, because he wanted to be fair. Right. He controlled the money. He determined what the juvenile would get for those proceedings. How does that show control? He gave her the money. He got the money. He gave her some of the money. How did ---- I don't understand how that fits the enhancement. The defendant called the shots here. He controlled the money. He determined the price of these transactions. He determined what he would get. He would determine what the juvenile would get. This is not an equal part of the strategy. How is he using the juvenile to ---- in the transaction? I mean, that's the whole point of this, is that you're using juvenile status to succeed in the transaction. I mean, it could have been somebody who was 50 or 80 years old, right? Right, Your Honor. But he ---- this is a ---- that's what we're talking about here. What you're basically arguing for is a strict liability standard on this enhancement, aren't you? And that's not the standard, is it? Your Honor, we're not arguing that at all. And the district court did not apply a strict liability. The district court considered all the evidence in this case, and the evidence includes the fact that the defendant encouraged the juvenile. He emboldened the juvenile. He controlled the strings. He controlled the money, the transactions. He cooked and he cooked the crack. He determined how much crack he was going to cook. He supplied the crack. He ---- for example, he's the one who picked up the juvenile for both of those transactions on both July 13th and July 30th. He picked up the juvenile in his vehicle. He drove her and the drugs to the buy location for each transaction. The juvenile was in the defendant's vehicle for a specific purpose, and that is to facilitate his drug trafficking activities. For example, on July the 13th, the undercover abandoned the operation as a result of safety concerns. The defendant subsequently arrived at the buy location. He picks up the juvenile, and he uses the juvenile to locate, identify, and introduce him to the undercover. If the defendant had not taken affirmative steps to involve the juvenile, he would not have been able to complete those transactions. After the first transaction, as Your Honor noted, the defendant directed and solicited the juvenile to call him if the same buyer contacted her again. The juvenile complied, and she subsequently informed the defendant. The buyer wants to buy additional cocaine base, which led to the second transaction. Anything you've just read, what are you reading from, your notes? I'm reading from my notes based upon the record, Your Honor. Okay. Does any of that come from these declarations, or is it outside the declarations? Some of them are from the declarations, for example, and from the defendant's statements, and from the juvenile's statements, with respect to how much money he gave the juvenile. That comes directly from the defendant. The defendant did not say, I called the shots, did the defendant? No, but if you look Did the defendant ever say, I controlled the transaction? Your Honor, if you look That's your interpretation of events, right? I just want to make sure, because you blend in statements along with the undisputed statements with your characterization of them. I'm just looking at the facts, Your Honor. And the facts indicate the defendant controlled everything. Right. But, you know, you said, well, he admitted this, he admitted this, he controlled the transaction. That's your But that's just your characterization. I want to make sure that I'm understanding your argument. That's based upon the facts, Your Honor. That's based upon the defendant's admissions and the plea agreement. That's based upon the record. That's based upon the declarations of the agents. That's based upon the entire record. It's not my interpretation. It's a presentation of the facts, and anybody looking at those facts Did anybody say he called the shots? Was there any testimony? Did anybody use those words? I can't find it. He said in his plea agreement a number of things, for example. And the judge found that the defendant's own words in the plea agreement was more probative than a hearsay declaration from an investigator. And what the defendant said in his plea agreement are a number of things. He said, for example, and I'll just look at the plea agreement. Okay. He talks about the various transactions. He talks about the juvenile's role in those transactions for the July 13th transaction. It's the defendant who did most of the negotiation with the undercover. He told the undercover where to go.  He talks about the amount of money he gives to the juvenile, and it goes on and on. And the judge said, well, this is more probative than what is in a hearsay declaration from the Federal Public Defender's Office for the purposes of sentencing. But the judge did not limit her finding based upon a plea agreement. She looked at everything in the record and looked at the facts. And based upon these facts, I was submitted to this Court that you need to wind up by the way we've been. Two questions I want to ask. Do you mind answering my question? Yes, Your Honor. Okay. We have two cases that are significant in our circuit, and we have to find out which pigeonhole they're in. We have Judge Goodwin's case for our circuit, the bank robbery case, where he stated for the Court the defendant acted affirmatively. Let's see. Here, there was no such evidence. The district court's finding was that Parker and Bailon were merely co-conspirators. The fact the defendant was a minor partner and profited from the participation in the crime does not show he acted affirmatively to involve Bailon. Then we have the second case. It was authored by Judge Graber, talking about Parker, Judge Goodwin's case. In Parker, an adult defendant robbed a bank with a teenage accomplice, but the defendant did nothing affirmatively to involve the minor in the offense. In this case, the defendant affirmatively involved his young son in the offense by placing him in the truck in which he was smuggling drugs. Now, that's all we have, really, to guide us of what Parker said about affirmatively involving or putting somebody in a truck. So that there's been — is this a partnership in which one of the people, the young lady provides a service, and the defendant provides another service together, they work out the deal, and she gets money? That's Parker. Or is this something closer to where a person puts his young son in the vehicle that's going to be a drug-smuggling car? Yes, Your Honor. With respect to Parker, there were two facts in Parker, and these are very general facts. Number one, defendant and his co-conspirators availed themselves of the fruits of the minor's thievery. Very general. There's nothing there that's comparable to the facts in this case. And the second fact of Parker, defendant's mere presence encouraged the minor to loot the teller drawers. Those two general — those two general statements, this Court held that those were not affirmative acts for the purpose of the two-level enhancement. Without reiterating the facts in this case, there's a significant — significantly a lot more than that. Here, we have — this is not an equal partnership. If it were an equal partnership, the juvenile would have a say in how much money she would have. Is that a partnership? Your Honor? It's — They were partners. Co-participants. Didn't they equal? Right. But it wasn't — but it was — it's very clear who was in charge and who was in charge was the defendant. I think — I think we understand your position in your response to Judge Wallace's question. You're now six minutes over your time. Do you have something else? I need to ask one more question. The district judge referred to a Second Circuit case during the time they made this determination. The Second Circuit apparently sees things differently than we do under Parker. And he said, I like the reasoning of the Second Circuit case. Doesn't this tell us that he was swaying from Parker and adopting the Second Circuit approach rather than following the law in the Ninth Circuit? For my recollection, Your Honor, the — Judge Armstrong, what — what the government had argued is that really what's relevant here is the defendant's intent. The question before you is whether the district judge, Judge Armstrong, in Oakland, relied — tried to rely upon a Second Circuit case, and — and should we or should we not take that as her inclination not to follow Ninth Circuit law? That's the question. What's your response? Your Honor, the judge did not base her determination on a Second Circuit case. Did she cite Parker? She was made aware of Parker, Your Honor. Did she cite Parker? Whether she used the word Parker, I'm not sure. I have no recollection of that. She did rely upon a Second Circuit case. She might have mentioned — That she was relying — She might have mentioned the case. What do you make of this? Let me read from the transcript. She did mention it. She said that she was persuaded by it. So applying the reasoning of Gaskin to this case, Gaskin is the Second Circuit case. How can you tell us that she wasn't relying on Gaskin when she says, applying Gaskin to this case, and then she makes her findings? Two points. Two points, Your Honor. The judge looked at all the evidence in this case. She did not apply a strict liability. With respect to that portion of Gaskin, I think the part that she — that she was focusing on is that Gaskin says that's really what's relevant here are the — is the defendant's intent. It's really not relevant what the juvenile thought her role was, because what Congress — the purpose of this enhancement is to — I don't think that — I think you're going way beyond the question. We're trying to focus on her thinking at that time. And you're saying that the Second Circuit case has absolutely nothing to do with how she came out. I think she looked at — she did not apply a strict liability standard. She looked at all the facts. I think as far as Gaskin — You don't seem to answer the questions. You could — that could be yes or no. Did she follow the Second Circuit? I would say no. Okay. I have your answer. Thank you. Thank you. Thank you, counsel, for your argument. Ms. Rabaul. Your Honor, simply two points. One, I just wanted to disagree with the government's characterization that the district court considered all of the evidence, including the government's evidence, to apply the adjustment. On page 93 of the appellant's excerpts, a government counsel says, Your Honor, the government submitted, if you were to take all of the affidavits submitted, all of the declarations submitted by the defense, even if you were to assume the truth of them, and portions of them are not true, even if you were to assume the truth of them, it would not support the defense counsel's position. Second, I did want to also — Now, that sounds different than what you said in your opening argument. I took your opening argument to say that the government told Judge Armstrong that she could consider the content of the declarations to be true. And that's — that's exactly how I read that, Your Honor. And I would ask the Court to look at the transcript at page 93. It sounds like from your reading of it that what counsel for the United States said was even if you assume it to be true, there are other things in the record which contradict it. I mean, I'm trying to find out if there is a difference between, as I described earlier, between saying you can assume if these witnesses were — the declarants were called as live witnesses and testified, what's in those declarations, and concede that what's in them is absolutely true, and if it contradicts something else in the record, you take what's in the declaration, not what else is in the record. Do you understand the difference between the two? I do. And the reason the government said that everything could be assumed true, even though they disagreed with it, they encouraged the Court to go ahead and assume those facts were true, because to the government, Mr. Anderson's facts were irrelevant, because the Court — because the government was focusing the Court on Gaskin and the Seventh Circuit cases. The government was encouraging the Court to look exclusively at the — beyond Mr. Anderson's submissions, because those submissions to the government were not probative, because the government was explaining to the Court, as Gaskin  was not relevant. And I think what the Court and the government were not distinguishing was the minor's subjective intent versus her objective actions, which is what our declarations — My colleague has just handed me the ER. It looks like at page 94, and this is from the sentencing transcript, and this is the law based upon the declarations, even assuming the truth of all the declarations submitted by the defense, because what they're focusing on is what the juvenile did or what the juvenile didn't do. Okay. Okay. All right. Thank you for your argument. Do you have anything else? No. Thank you both for your argument. The case just argued will be submitted for decision, and we'll proceed to the next case on the calendar.
judges: Wallace, Hawkins, Thomas